UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MIRIAM J. JIGGETTS,**
        **Plaintiff,**

v.                                         Civil Action No. 2:04cv634

**AMERICAN FUNDS GROUP,**
        **Defendant.**

## OPINION AND ORDER

This matter is presently before the court on the defendant's Motion for Summary Judgment. After examination of the record, the court determines that the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, the court **GRANTS** defendant's motion, thereby terminating this matter in favor of the defendant.

### I. Procedural History

The motion before the court arises out of an employment discrimination lawsuit filed on November 4, 2004, by pro se plaintiff, Miriam J. Jiggetts. The complaint alleges that defendant, American Funds Group ("AFG"),[1] and three named AFG employees, discriminated against plaintiff by terminating her employment based on her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34. On December 20, 2004, AFG and the named employees filed motions to dismiss plaintiff's claims. On February 15, 2005, this court entered an Order granting AFG and the individually named defendants' motions based on

---

[1] The defendant's correct name is "American Funds Service Company," however, as both parties' filings refer to defendant as AFG, the court will do so as well.

plaintiff's apparent failure to exhaust her administrative remedies prior to filing suit. Furthermore, as to the named individuals, the court concluded that even if the court had jurisdiction to consider plaintiff's claims, the ADEA does not support a cause of action against individual employees (Feb. 15, 2005 Order n.3). Subsequently, the pro se plaintiff appealed the dismissal of her case, and presented evidence on appeal never provided to the district court. Plaintiff's new evidence suggested that she had exhausted her administrative remedies as for the first time plaintiff produced a right to sue letter issued by the Equal Employment Opportunity Commission. In an unpublished opinion dated August 16, 2005, the Fourth Circuit affirmed the dismissal of the individually named defendants, but remanded the matter for further proceedings with respect to AFG. Jiggetts v. Sharpe, 141 Fed. Appx. 162 (4th Cir. 2005) (unpublished).

Following remand, this court conducted a hearing to address several issues raised in AFG's motion to dismiss, concluding: (1) that plaintiff had exhausted her administrative remedies and timely filed suit against AFG; (2) that plaintiff's claims under the Virginia Human Rights Act, Va. Code § 2.2-2639, must be dismissed; and (3) that plaintiff's claims for punitive damages under the ADEA must be dismissed (Jan. 4, 2006 Order). Following the court's Order and after conducting discovery, on March 22, 2006, AFG filed the instant motion for summary judgment, attaching as exhibits excerpts from plaintiff's deposition, plaintiff's responses to requests for admission, and sworn affidavits from David Sharpe, AFG's Human Resources Director, and Susanne Michelle Collins, an AFG Shareholder Services Manager. At the foot of defendant's motion, in bold typeface, was a warning notifying the pro se plaintiff of her rights pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), including her right to file a response and the potential consequences of her failure to respond. However, even after such warning was issued, plaintiff failed to submit any response to defendant's motion.

## II. Factual Background

Pro se plaintiff Miriam J. Jiggetts was hired by AFG, a financial services company that administers investment accounts, for the position of Shareholder Account Representative ("SAR"). SARs at AFG are responsible for processing written and telephonic transaction requests for investment accounts held by both individuals and brokers. SARs must process such requests "promptly and accurately . . . [and] must be able to multitask: referring to the source document or telephone caller, consulting on-line resources to answer questions, and maneuvering between multiple sub-systems of the AFG account software" (Collins Affidavit ¶ 3). Plaintiff began the extensive SAR training program on April 12, 2004, with 13 other SAR trainees. The SAR training program involves "comprehensive, hands-on training on all aspects of the[] job, including how to navigate within AFG's computer databases and applications . . . " (Collins Affidavit ¶ 4). The fourteen trainees underwent SAR training together as a class, and were instructed both in a classroom setting and through practical application. The trainees were also organized into small teams of four or five, with each group assigned a team leader to provide instruction, answer questions, and provide feedback. As the program progressed, the practical application aspect increased while the classroom instruction decreased.

Plaintiff's team was led by Robin Kessler, who in turn reported to Susanne Collins, the shareholder services manager. Soon after the SAR training program began, Ms. Kessler informed Ms. Collins that plaintiff was having difficulty in training; specifically, plaintiff "was slow to grasp the training concepts, was not receptive to feedback, was slowing down the pace of instruction for the entire training class, took longer than was usual to perform her work, and made an unacceptable number of errors" (Collins Affidavit ¶ 8). After independently reviewing plaintiff's work as well as consulting with other trainers and senior SARs who had observed

plaintiff or her work product, Ms. Collins confirmed that plaintiff was having performance problems and was "consistently ranked at or near the bottom of the class on feedback results" (Collins Affidavit ¶ 9). Likewise, Ms. Jiggetts admits in her deposition that she was generally the only person from her class coming in early and working through lunch in order to catch up on her work (Jiggetts Depo. 29-30).

Starting on May 4, 2004, Ms. Collins began having almost weekly meetings with Ms. Jiggetts to discuss plaintiff's performance. Ms. Jiggetts was repeatedly told that she was not meeting expectations and that her refusal to accept feedback and instruction was "a cause of serious concern" (Collins Affidavit ¶ 10). Ms. Jiggetts resisted the feedback provided in such meetings and argued that she would show sufficient improvement by the end of the scheduled six-month training period. However, on June 8, 2004, Ms. Collins decided not to permit plaintiff to proceed to the next phase of training with the rest of the class. After such decision was made, Ms. Collins discussed plaintiff's situation with David Sharpe, AFG's Human Resources Director, and on June 15, 2004, Mr. Sharpe met with the plaintiff. Plaintiff continued to be resistant to counseling and she "refused to take responsibility for her performance and seemed unconcerned with the seriousness with which [AFG] viewed her performance issues" (Sharpe Affidavit ¶ 4). Ms. Collins and Mr. Sharpe subsequently met to discuss Ms. Jiggetts' future with AFG and determined that plaintiff was "not demonstrating the accuracy and quality that is critical to AFG's work" (Sharpe Affidavit ¶ 4). As a result, on June 24, 2004, Ms. Collins and Mr. Sharpe met with Ms. Jiggetts and terminated her employment with AFG.

### III. Standard of Review

Summary judgment is only appropriate when the court, viewing the record as a whole and

in the light most favorable to the non-moving party, determines that there exists no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985); Fed. Rule. Civ. Pro. 56(c).  Although the court must draw all inferences in the non-movant's favor, once the movant has properly filed evidence supporting summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating a genuine issue for trial. Celotex, 477 U.S. at 322-24; Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994).  Such facts must be presented in the form of exhibits and sworn affidavits and must make a sufficient evidentiary showing such that a jury could reasonably find in the non-movant's favor. Celotex, 477 U.S. at 324.  In other words, while the movant carries the burden to show the absence of a genuine issue of material fact, when such burden is met, it is up to the non-movant to establish the existence of such an issue. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not reserved for situations where no factual issues are in dispute; rather, to find against the moving party the court must find both that material facts are in dispute and that the disputed issues are genuine.  Fed Rule of Civ. Proc. 56(c).  Disputed facts are material if they are necessary to resolving the case and to be genuine they must be based on more than speculation or inference.  See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).  If the moving party advances evidence suggesting that there is not a genuine and material dispute, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," as the existence of a scintilla of evidence is insufficient to defeat a motion for summary judgment. Matsushita, 475 U.S. at 586;

Catawba Indian Tribe of S.C. v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992).

### IV. Analysis

Plaintiff's complaint alleges that defendant terminated her employment based on her age in violation of the ADEA; plaintiff was fifty-two when she filed her complaint. In response to plaintiff's allegations, defendant has moved for summary judgment and provided the court with several exhibits, including sworn affidavits, which chronicle plaintiff's eleven week work history with defendant. Although defendant submitted a detailed motion for summary judgment with affidavits, excerpts from plaintiff's deposition, and other supporting documents, plaintiff failed to file a responsive memorandum, an affidavit, or any other response or exhibit rebutting defendant's position or challenging defendant's version of the facts. Thus, plaintiff has failed to rebut defendant's convincing showing that there are no genuine issues of material fact before the court; therefore, summary judgment in defendant's favor is proper. Celotex, 477 U.S. at 322-24; Cray Communications, 33 F.3d at 393-94; Bradford v. School Dist. No. 20, 364 F.2d 185, 187 (4th Cir. 1966) ("When a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real . . . controversy exists, and, of course, he does not do that by mere denial or holding back evidence.") (quoting Bruce Construction Corp. v. United States, 242 F.2d 873, 875 (5th Cir. 1957)).

There are two primary avenues by which plaintiff may defeat defendant's motion for summary judgment with respect to her ADEA claim. First, plaintiff may establish through ordinary principles of proof using "direct or circumstantial evidence that . . . age discrimination motivated the employer's adverse employment decision." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). Under the "mixed motive" approach, plaintiff

6

need not establish that her age was the sole cause for her termination, but rather, that age was a "substantial motivating factor in the termination decision." Mereish v. Walker, 359 F.3d 330, 339 (4th Cir. 2004).[2]

In the alternative, plaintiff may advance her case by establishing a presumption of discrimination under the burden shifting scheme as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. To do so, plaintiff must state a prima facie case by showing: "(1) [s]he is a member of the protected class; (2) [s]he was qualified for the job and met [AFG's] legitimate expectations; (3) [s]he was discharged despite [her] qualifications and performance; and (4) following [her] discharge, [s]he was replaced by a substantially younger individual with comparable qualifications." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006); see O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). If plaintiff succeeds in presenting a prima facie case, an inference of discrimination arises, and the defendant must then articulate a legitimate non-discriminatory reason for the challenged actions. McDonnell Douglas, 411 U.S. at 802. Defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." Warch, 435 F.3d at 514 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000)). Once such explanation is provided by the defendant, the presumption of discrimination is extinguished, and plaintiff must present evidence that defendant's justification was pretext for a discriminatory motivation. Reeves, 530 U.S. at 142-43. The burden of establishing pretext "merges with the ultimate burden of persuading the

---

[2] It remains unsettled whether a plaintiff advancing claims under the ADEA can rely on circumstantial evidence to establish discrimination under a mixed motive approach. Mereish, 359 F.3d at 339-40. However, here, it is unnecessary for the court to tackle such issue as even if the court considers circumstantial evidence, as it would under the more lenient standard applicable to a Title VII claim, plaintiff's ADEA claim fails.

7

court that [plaintiff] has been the victim of intentional discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Mereish, 359 F.3d at 334.

### A. The "Mixed Motive" Approach

To establish a credible claim under the "mixed motive" approach, plaintiff must demonstrate that her age was a "substantial motivating factor" in AFG's decision to terminate her. Mereish, 359 F.3d at 339. Here, plaintiff fails to present any direct evidence that she was fired based on her age. Notably, plaintiff admits in her deposition that during the numerous instances when AFG trainers allegedly berated her both in front of the training class and in private, not a single comment was ever made suggesting that her age was in any way related to her unsatisfactory performance or termination (Jiggetts Depo. 123). Likewise, plaintiff does not advance any circumstantial evidence suggesting that she was terminated because of her age. Plaintiff does contend that she "sensed" that SAR trainers were tampering with her work and setting her up to fail based on her age; however, plaintiff admits that such belief was based on speculation grounded in the fact that she was constantly being told that she had too many errors (Jiggetts Depo. 42, 47-50). Plaintiff's completely unsubstantiated hunches, based primarily on the fact that she was treated harshly for underperforming, are plainly insufficient in light of her complete lack of evidence, direct or circumstantial, that her age played a motivating factor in her termination.[3]

---

[3] Plaintiff's allegations are similar to those rejected by the Fourth Circuit in Hawkins v. PepsiCo, 203 F.3d 274 (4th Cir. 2000), where the court found that although the plaintiff framed her supervisor's conduct in racial terms, she failed to present any facts which suggested the "allegedly disparate treatment was due to race rather than [her supervisor's] admittedly low regard for [her] individual performance." Id. at 281. The court concluded that although the plaintiff established that she and her supervisor "did not see eye-to-eye," that such "difference of opinion, coupled with [plaintiff's] conclusory allegations of racism, cannot reasonably support the conclusion that [her] discharge was motivated by racial animus." Id.

Furthermore, on these facts, a strong inference exists that plaintiff's age was not a motivating factor in defendant's termination decision and plaintiff fails to provide the court with an affidavit or any other evidence suggesting that such presumption should not apply.  See Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991).  In Proud, the Fourth Circuit recognized that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."  Id.  In Proud, the plaintiff was hired and fired by the same individual within a period of approximately four and half months.  Id. at 796.  Furthermore, prior to termination, the plaintiff in Proud underwent counseling sessions with the individual who hired and fired him and was told at such sessions that his performance was not satisfactory.

Here, the facts are almost identical to those of Proud, as it is undisputed that Ms. Jiggetts was hired and fired in a period of less than three months, and that Ms. Collins and Mr. Sharp made the hiring and firing decisions.  Furthermore, prior to her termination, Ms. Jiggetts underwent counseling sessions with Ms. Collins at which Ms. Jiggetts was told that her performance was unsatisfactory.  Thus, as in Proud, on these facts, a "strong inference" exists that plaintiff was not terminated based on her age, but rather, because AFG was dissatisfied with her performance.[4]  Because all the evidence advanced by AFG establishes that defendant's

---

[4] Plaintiff's deposition reveals that plaintiff did improve as her training progressed and Ms. Collins' affidavit suggests that plaintiff highlighted the same during counseling sessions (Jiggetts Depo. 44; Collins Affidavit ¶ 10).  However, it is the judgment of AFG that is relevant to the court's inquiry, not plaintiff's evaluation of her own conduct.  See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005) (explaining that a plaintiff "cannot establish her own criteria for judging her qualifications," but rather, must satisfy the "qualifications established by her employer"); Hawkins, 203 F.3d at 280 (finding that the plaintiff's contentions that she was performing adequately "prove only the unremarkable fact that

decision to terminate plaintiff was motivated solely by the fact that plaintiff was not grasping training concepts quickly enough and making too many errors while training for a job position that required precision, and because plaintiff failed to advance any argument or evidence suggesting otherwise, there is simply nothing in the record that could lead a reasonable jury to conclude that plaintiff's age was a motivating factor in AFG's termination decision. Therefore, summary judgment in defendant's favor is proper.

### B. The McDonnell Douglas Burden Shifting Scheme

As plaintiff has failed to establish through direct or circumstantial evidence that her age was a motivating factor in AFG's termination decision, she must rely on setting out a prima facie case under the burden shifting scheme set forth in McDonnell Douglas and its progeny. To establish a presumption of discrimination, plaintiff must show that: (1) she is over forty years old; (2) she was qualified for the position as an SAR and she met AFG's legitimate expectations; (3) she was discharged despite her qualifications; and (4) she was replaced by someone substantially younger. Warch, 435 F.3d at 513; 29 U.S.C. § 631. After considering the record, the court determines that plaintiff has failed to establish either that she met AFG's legitimate expectations or that she was replaced by someone substantially younger. Furthermore, even if plaintiff had established a prima facie case, defendant has articulated a nondiscriminatory reason for AFG's termination decision and plaintiff has not advanced any evidence establishing that such justification was pretext for age discrimination.

---

she and [her employer] disagreed about the quality of her work . . . however, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (citations omitted). Thus, the fact that plaintiff may have shown some level of improvement over the course of two and half months in no way undercuts AFG's contention, supported by affidavits and plaintiff's own deposition, that AFG was simply not satisfied with plaintiff's performance.

First, Ms. Jiggetts fails to establish that she was meeting AFG's legitimate expectations; on the contrary, she admits that she was falling behind in her class work and that she often had to ask the same question on more than one occasion. Ms. Jiggetts cannot rely on the fact that she successfully passed AFG's pre-hiring "skills test" or the fact that she may have been showing some degree of improvement to establish that she was meeting AFG's expectations. As to the pre-hiring skills test, the Fourth Circuit has expressly rejected the contention that a district court should focus only on whether a person was "qualified" at the time of hiring, instead permitting a court to consider job expectations and performance. Warch, 435 F.3d at 514. In Warch, the Fourth Circuit explained:

> Considering an employer's legitimate expectations comports with the purpose of requiring the establishment of a prima facie case–to screen out those cases whose facts give rise to an inference of nondiscrimination . . . . Once a person is hired, the distinction between qualifications and job expectations tends to blur. An employee may be qualified when hired, but could fail . . . to meet [her] employer's legitimate expectations for job performance. In such cases, the prima facie case requires the employee to demonstrate "that [s]he was 'qualified' in the sense that [s]he was doing [her] job well enough to rule out the possibility that [s]he was fired for inadequate job performance, absolute or relative."

Id. at 514-15 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1013 (1st Cir. 1979)). Addressing plaintiff's improved performance, as discussed above in note four, it is AFG's judgment that is relevant to the court's inquiry, not plaintiff's perception of her own performance. See Anderson, 406 F.3d at 269. The affidavits and other evidence before the court plainly indicate that AFG was dissatisfied with plaintiff's performance; therefore, considering AFG's legitimate expectations from the perception of the decision maker, plaintiff has failed to establish the second element necessary for creating a presumption of discrimination. Additionally, plaintiff also failed to advance any facts suggesting that she was replaced by someone substantially younger, the fourth element of a prima facie case. As a result, summary judgment is proper.

In the alternative, even if the court had concluded that plaintiff established a prima facie case, AFG has clearly met its burden to articulate a legitimate non-discriminatory reason for the termination decision. See McDonnell Douglas, 411 U.S. at 802. Specifically, defendant has produced affidavits, as well as excerpts from plaintiff's deposition, which articulate plaintiff's poor performance as justification for her termination. Because defendant has proffered a non-discriminatory justification, the burden shifts back to plaintiff, requiring that she advance evidence indicating that defendant's justification was merely pretext for a discriminatory motive. If plaintiff fails to advance such argument, defendant is entitled to summary judgment. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

Here, as defendant's motion for summary judgment included affidavits and other exhibits that support defendant's non-discriminatory justification, plaintiff may not rest on the assertions in her complaint, but must present affidavits or other exhibits in order to make a sufficient evidentiary showing such that a jury could reasonably find in her favor. Celotex, 477 U.S. at 324. However, plaintiff has failed to advance any evidence suggesting that defendant's justification is pretextual. Furthermore, "[t]he relevance of the fact that [plaintiff] was hired and fired by the same person within a relatively short time span comes at the third stage of the [McDonnell Douglas] analysis . . . [and] creates a strong inference that the employer's stated reason for acting against the employee is not pretextual." Proud, 945 F.2d at 798. In Proud, the Fourth Circuit recognized that in a case such as this, the plaintiff "still has the opportunity to present countervailing evidence of pretext," however, "such evidence will not be forthcoming . . . [as] employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." Id. Here, although plaintiff had the opportunity to present countervailing evidence, she failed to do so. As a result, summary judgment in

defendant's favor is not only proper but is mandated as the Fourth Circuit has held that "[a]n employer is <u>entitled</u> to summary judgment if the plaintiff <u>fails to establish a prima facie case</u> of discrimination or <u>fails to raise a factual dispute regarding the employer's proffered reasons</u> for the alleged discriminatory act." <u>Henson</u>, 61 F.3d 270, 274 (4th Cir. 1995) (emphasis added).

## V. Conclusion

For the reasons discussed more fully above, defendant's motion for summary judgment is **GRANTED**. Plaintiff's ADEA claims fail under both the mixed motive approach and the burden shifting framework set forth in <u>McDonnell Douglas</u> and its progeny. Plaintiff failed to advance any direct or circumstantial evidence suggesting that she was terminated based on her age; rather, the evidence before the court indicates that plaintiff was not "qualified" in that she was not meeting AFG's legitimate expectations. Likewise, plaintiff failed to rebut defendant's proffered termination justification and failed to respond to the "strong inference" that arose because plaintiff was hired and fired by the same individuals in a short time span. As a result, defendant is <u>entitled</u> to summary judgment, thereby terminating this matter in defendant's favor.

The <u>pro se</u> plaintiff is advised that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **REQUESTED** to mail copies of this Order to the <u>pro se</u> plaintiff and to counsel for the defendant.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 8, 2006